## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| BENT GLASS DESIGN, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : | No. 13-4282 |
|  | : |  |
| SCIENSTRY, INC., | : |  |
|  | : |  |
| Defendant. | : |  |

_____

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                **February 12, 2014**

Presently before this Court is Defendant, Scienstry, Inc.'s, "Supplemental Motion to Dismiss Plaintiff's Amended Complaint and/or Transfer Venue," Plaintiff, Bent Glass Design's Response in Opposition, and the oral arguments set forth by the parties at a hearing held on January 24, 2014. For the following reasons, Defendant's Motion is denied.

## I.     BACKGROUND

Plaintiff, Bent Glass Design, Inc. ("Plaintiff"), is a corporation, organized and existing under the laws of Pennsylvania, with an office located at 3535 Davisville Road in Hatboro, Pennsylvania. Compl. ¶ 1. Plaintiff is in the business of processing, shaping, fabricating and manufacturing glass products for all different types of industries, applications and uses including shipbuilding. Id. ¶ 10. Defendant, Scienstry, Inc. ("Defendant"), is a corporation, organized and existing under the laws of Texas with an office located at 1110 East Collins Boulevard in Richardson, Texas. Id. ¶ 2. Defendant engages in the fabrication and sale of privacy glass panels. Id. ¶ 12.

For the past several years Plaintiff has been working on a project, known as the Swift Boat 141 Project (the "Swift Boat Project"), that involved supplying finished glass products for a very large yacht being built in Abu Dhabi, United Arab Emirates.  Id. ¶ 11.  At some point in 2009, Plaintiff, who is not a manufacturer of privacy film, identified Defendant as a potential vendor to provide this product for the Swift Boat Project.  Id. ¶¶ 27-28.  Plaintiff contacted Dr. Jenson Wang ("Dr. Wang"), the owner and President of Defendant, regarding Plaintiff's need for privacy film.  Id. ¶¶ 14, 28.  Subsequent to consulting with Dr. Wang, Plaintiff decided to purchase Defendant's 3G Switchable Film, NPD-300 Series ("300 Film"), for use in the Swift Boat Project.  Id. ¶¶ 36-38.  In the period beginning November 13, 2009, through late March 2011, Plaintiff ordered multiple shipments of the 300 Film at a total cost of $234,633.11.  Id. ¶ 46.

In or around December 2010, after most of the panels of the 300 Film were installed on the Swift Boat, it became apparent that the 300 Film was not providing the requisite privacy for which it had been chosen and ordered.  Id. ¶¶ 73, 75.  As a result, Plaintiff was required to uninstall the 300 Film and find a suitable replacement privacy film.  Id. ¶ 77.  After again consulting with Dr. Wang, Plaintiff selected the 400 Film to replace the 300 Film and ordered a total of $329,538.16 of the product.  Id. ¶ 79.  In order to complete the privacy panel part of the Swift Boat Project, Plaintiff had to fabricate and laminate new replacement panels for all the previously installed 300 Film panels using the new 400 Film.  Id. ¶ 80.  Since the installation of the 400 Film onto the Swift Boat, the product has performed as intended.  Id. ¶ 85.

On July 24, 2013, Plaintiff filed suit against Defendant in the United States District Court for the Eastern District of Pennsylvania (the "Eastern District of Pennsylvania") alleging breach

2

of contract, breach of the implied warranty of fitness for a particular purpose and breach of the implied warranty of merchantability.  (See Doc. No. 1.)  On August 19, 2013, Defendant filed a Motion to Dismiss Plaintiff's Complaint and/or Transfer Venue.  (See Doc. No. 6.)  Plaintiff did not respond to Defendant's Motion; rather, it submitted an Amended Complaint on September 25, 2013.  (See Doc. No. 9.)  Defendant subsequently filed a Supplemental Motion to Dismiss Plaintiff's Amended Complaint and/or Transfer Venue to which Plaintiff responded on November 21, 2013.  Oral argument regarding issues of jurisdiction and venue were heard before the Court on January 24, 2014.

## II.   DISCUSSION

Defendant's Motion raises questions concerning jurisdiction and venue.  The first inquiry is whether a court sitting in Pennsylvania may exercise jurisdiction over Defendant, a Texas corporation.  Defendant argues that it lacks the requisite connections with Pennsylvania for the Court to exercise personal jurisdiction over it; therefore, the action must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

The second inquiry is multi-faceted.  First, we must determine the validity of the forum selection clause cited by Defendant.  Second, if this clause is found to be inapplicable, we must ascertain whether the Eastern District of Pennsylvania is the proper venue for Plaintiff's claims. If it is not found to be proper, we must then decide whether the action should be dismissed or transferred to the United States District Court for the Northern District of Texas (the "Northern District of Texas").

## A.   JURISDICTION

Rule 4(e) of the Federal Rules of Civil Procedure grants federal district courts with

3

personal jurisdiction over non-resident defendants to the extent permissible under the state law of the jurisdiction where the court sits.  See Fed. R. Civ. P. 4(e); see also Metcalfe v. Renaissance Marine, Inc., 556 F.3d 324, 330 (3d Cir. 2009).  In Pennsylvania, the applicable long-arm statute allows personal jurisdiction over non-resident defendants to be exercised to the extent permissible under the due process clause of the Fourteenth Amendment.  See Pa. Cons. Stat. § 5332(b)[1]; see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 481 (3d Cir. 1993).

A district court may exercise *in personam* jurisdiction over a non-resident so long as the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  When a defendant calls into question the district court's lack of personal jurisdiction, the burden rests with the plaintiff to prove personal jurisdiction by a preponderance of the evidence.  Control Screening LLC v. Tech. Application and Prod. Co., 687 F.3d 163, 167 (3d Cir. 2012).  This burden is met when the plaintiff sets forth a prima facie case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state."  Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting Provident Nat. Bank v. California Fed. Sav. & Loan Assoc., 819 F.2d 434 (3d Cir. 1987)).

There are two types of personal jurisdiction: general and specific.  Helicopteros

---

[1]Specifically, the Pennsylvania long-arm statute allows for the exercise of jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  Pa. Cons. Stat. § 5332(b).

Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 (1984).  General jurisdiction requires only that the plaintiff's claim arises out of the non-resident defendant's "continuous and systematic" contacts with the forum state, and does not require that the cause of action be related to the defendant's activities in the forum state.  Rocke v. Pebble Beach Co., No. 13-1149, 2013 WL 5568727, at *2 (3d Cir. Oct. 10, 2013).  On the other hand, in order for a district court to possess specific jurisdiction, the plaintiff's claim must arise out of the defendant's forum related activities such "that the defendant should reasonably anticipate being haled into court there." Vetrotex Certainteed Corp. v. Consl. Fiber Glass Prods. Co., 75 F.3d 147 (3d Cir. 1995) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

The proper exercise of specific jurisdiction relies on the presence of three criteria. First, Plaintiff must show that Defendant has "purposefully directed its activities" at the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Second, Plaintiff's claims must "arise out of or relate" to at least one of those activities.  Helicopteros, 466 U.S. at 414.  Third, if these two prongs are met, the court must then consider whether exercising jurisdiction would "comport with fair play and substantial justice."  Burger King, 471 at 476 (citing Int'l Shoe, 326 U.S. at 320).

Due to the standard for general jurisdiction being more difficult to satisfy, the logical starting point is whether Plaintiff has proven the existence of specific jurisdiction by a preponderance of the evidence.  See Compagnie Des Bauixites De Guinne v. L'Union, 723 F.2d 357, 362 (3d Cir. 1983) (recognizing general jurisdiction requires defendant's contacts with the forum to be qualitatively and quantitatively greater).  Prior to addressing the arguments relating to jurisdiction, we must consider a preliminary matter.  Defendant argues that Plaintiff "failed to

allege specific jurisdiction" in the Amended Complaint.  See Suppl. Mot. to Dismiss or Transfer Venue ¶ 30.  This statement is incorrect because Plaintiff's Amended Complaint explicitly asserts specific jurisdiction.  See Am. Compl. ¶ 8.  Nonetheless, Defendant did submit additional arguments against the exercise of specific jurisdiction, which were further developed in oral argument.

After consideration of the parties' submissions and oral arguments, we conclude that we possess  specific jurisdiction over Defendant.[2]  Our exercise of jurisdiction rests on the following findings:  Defendant purposefully directed its activities at Pennsylvania, Plaintiff's claims arise out of or relate to these activities and the exercise of jurisdiction by this Court comports with the notions of fair play and substantial justice.  See Burger King, 471 U.S. at 472; Helicopteros, 466 U.S. at 414.

### 1.      Purposeful Availment

The starting point for our analysis is Defendant's internet website, which operated as the bridge connecting a Pennsylvania buyer with a Texas seller.  The website, though operated from Texas by Defendant, was accessible in Pennsylvania.  The United States Court of Appeals for the Third Circuit ("Third Circuit") recently affirmed that jurisdiction does not exist over a foreign entity solely by that entity's operation of a commercially available website.  Rocke v. Pebble Beach Co., 2013 WL 5568727, at *3 (citing Toys 'R' Us, Inc. v. Step Two, S.A., 318 F.3d 446, 454 (3d Cir. 2003)).  "Rather, there must be evidence that the defendant 'purposefully availed'

---

[2]It is the usual practice within this Circuit to assess jurisdiction on a claim-by-claim basis.  See O'Connor v. Sandy Lane Hotel Ltd., 496 F.3d 312, 318 n.3 (3d Cir. 2007); Remick v. Manfredy, 238 F.3d 248, 255-56 (3d Cir. 2001).  However, this is not necessary in cases, such as this case, where the claims are factually overlapping.  Id.

itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts."  Toys 'R' Us, 318 F.3d at 454.  Thus, we must determine whether Defendant's operation of a commercially interactive website accessible in Pennsylvania is sufficient to support specific personal jurisdiction.  See Id. at 451.

Plaintiff has adequately demonstrated and the record supports that Defendant knowingly interacted with a Pennsylvania corporation.  At the hearing, Dr. Wang acknowledged that he knew that Plaintiff was a Pennsylvania corporation at the time of the initial transaction.  In addition, the price quotation sent by Defendant to Plaintiff on November 12, 2009, explicitly listed Plaintiff's Pennsylvania location.

Furthermore, a string of recent cases have held that in the aggregate the operation of a website accessible in the forum state, the receipt of orders and payments from customers in that forum, and the shipping of products to the forum state constitutes purposefully targeting that forum state.  See Gentex Corp. v. Abbott, No. 12-2549, 2013 WL 5596307, at *4 (M.D. Pa. Oct. 10, 2013); TRE Servs., Inc., 2012 WL 2872830, at *4-5; Watson v. Blessey Marine Servs. Inc., No. 11-1252, 2011 WL 5878050, at *4-5 (W.D. Pa. Nov. 23, 2011); L'Athene, Inc. v. EarthSpring LLC, 570 F. Supp. 2d 588, 593-94 (D. Del. 2008).  Here, Plaintiff has shown that Defendant operated a website that was accessible in Pennsylvania.  Though Plaintiff could not make purchases directly through the website, Plaintiff could and did utilize the site to solicit Price Quotations from Defendant, which Plaintiff used to place orders.  Upon receipt of the corresponding Purchase Orders from Plaintiff, Defendant shipped the goods to Plaintiff's facility in Pennsylvania.  We find that this action is indicative of "purposeful availment."  Id.

7

A defendant's non-website related activities also play a role in the jurisdictional inquiry before this Court. See Toys 'R' Us, Inc., 318 F.3d at 453. For instance, "non-internet contacts such as serial business trips to the forum state, telephone and internet communications directed to the forum state, purchase contracts with forum state residents, contracts that apply the law of the forum state, and advertisements in local newspapers," can provide evidence of purposeful availment. Id. at 453-54 (citing Barrett v. Catacombs Press, 44 F. Supp. 2d 717, 726 (E.D. Pa. 1999)). In this case, Defendant's conduct in entering Pennsylvania to promote business with Plaintiff, as well as Defendant's extensive communications with Plaintiff, support a finding of purposeful availment.

There is disagreement between the parties as to the purpose and significance of Dr. Wang's sole visit to Plaintiff's Pennsylvania facilities on June 21, 2010. Defendant contends that Dr. Wang's visit was limited temporally, and only for the exclusive purpose of teaching Plaintiff's employees how to properly install the electrode. Plaintiff argues that Dr. Wang's visit, though partly for instructional purposes, was actually undertaken to forge a long-term business relationship. Plaintiff points to the fact that sales increased after Dr. Wang's visit, and that a long-term business relationship did actually develop with more than fifty separate sales consummated between the parties. The affidavit of Dr. Wang lends credence to both Plaintiff's and Defendant's views. In the affidavit, Dr. Wang stated that "the purpose of this trip was to explain to BGD's (Plaintiff) employees ways of installing bus bars so that they could save money when they made future purchases of Scienstry, Inc.'s (Defendant) products." See Def.'s Suppl. Mot. to Dismiss or Transfer Venue Ex. A. Thus, Dr. Wang's visit appears to have dual purposes. In a motion to dismiss pursuant to Rule 12(b)(2), we must accept all of Plaintiff's allegations as

true and construe disputed facts in Plaintiff's favor.  Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).  Accordingly, we find that the purpose and effect of Dr. Wang's visit indicates Defendant purposefully directed its activities at Pennsylvania.

In addition, Defendant communicated extensively by email and telephone with Plaintiff for a period of over a year.  The substance of these emails and phone conversations centered on the sale of Defendant's products to Plaintiff.  We find that the numerous communications between Plaintiff and Defendant were not "isolated or sporadic."  See Burger King, 471 U.S. at 487.  Rather, they were frequent and exemplify a substantial and continuous relationship between the parties, and thus, support a finding of specific jurisdiction over Defendant.  See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317-18 (3d Cir. 2007) (finding that isolated or sporadic contact absent a showing of deliberate action is insufficient to establish the minimum contacts required to establish specific jurisdiction).

In light of Defendant's internet and traditional contacts, it is clear that Plaintiff has satisfied its burden in setting forth a prima facie case that Defendant has intentionally directed its activities at the forum state.  See Burger King, 471 U.S. at 472.  Our finding is consistent with decades of Supreme Court jurisprudence, which "with respect to interstate contractual obligations, we (the Supreme Court) have emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."  Id. at 473 (quoting Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)); see also McGee v. Int'l Life Insur. Co., 355 U.S. 220, 222-23 (1957).

9

### 2.     Relationship of the Activities

Subsequent to finding that a defendant purposefully directed his business activities at the forum state, the court must then determine whether the plaintiff's cause of action arises out of or relates to the defendant's activities.  See Helicopteros, 466 U.S. at 414.  The underlying rationale for specific jurisdiction's relatedness requirement is the "tacit quid pro quo that makes litigation in the forum reasonably foreseeable."  O'Connor, 496 F.3d at 322.  In contract disputes the relatedness requirement is one of substantive relevance.  Gen. Electric v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001); Sky Motor Cars v. Auto Sport Designs, Inc., No. 09-4055, 2012 WL 3024006, at *6 (E.D. Pa. July 23, 2012).  The court's focus at this stage is directed at whether the "defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  Gen. Electric, 270 F.3d at 250.  Here, the extensive telephone and email communications between the parties were essential in the forging and the alleged breach of the contract that underlies Plaintiff's claims.  Accordingly, we find that Plaintiff's claims are sufficiently related to Defendant's business activities in Pennsylvania to satisfy the substantive relevance standard.  See Sky Motor Cars, 2012 WL 3024006, at *7.

### 3.     Fair Play and Substantial Justice

After the plaintiff establishes the first two requirements, the burden shifts to the defendant to show that the exercise of jurisdiction does not comport with the notions of fair play and substantial justice.  Int'l Shoe, 326 U.S. at 316.  When the plaintiff has set forth a prima facie case for specific jurisdiction, as in the case here, it is now Defendant's turn to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  O'Connor, 496 F.3d at 324 (quoting Burger King, 471 U.S. at 477).  The

10

defendant satisfies this burden by demonstrating that the factors set forth in <u>World-Wide Volkswagen Corp.</u>, 444 U.S. at 292, are present, thereby, making the assertion of jurisdiction unreasonable. <u>Mellon Bank</u>, 960 F.2d at 1226.

Here, Defendant has neglected to proffer such a "compelling case" to condemn the exercise of jurisdiction as being outside the boundaries of reasonableness. <u>See Id.</u> (holding that where a defendant has failed to show the unreasonableness of an otherwise constitutional assertion of jurisdiction, the court does not have to consider "fair play and substantial justice"). We note that though Defendant did not explicitly argue this prong, Defendant's contentions regarding the factors that favor a transfer of venue, which will be discussed later in this Opinion, do have some relevance to this issue. However, even imputing these factors into this discussion, Defendant cannot overcome its "heavy burden" of demonstrating that this is one of the "rare cases" where jurisdiction is unreasonable. <u>Pennzoil Prods. Co. v. Colelli & Assocs., Inc.</u>, 149 F.3d 197, 207 (3d Cir. 1998); <u>Grand Entm't Group</u>, 988 F.2d at 483.

In conclusion, we find that Defendant purposefully directed its business activities at Pennsylvania, that Plaintiff's claims arose out of Defendant's business activities, and that our assertion of jurisdiction over Defendant is neither unfair nor unreasonable. As a result of these findings, jurisdiction over the non-resident Defendant has been established. Defendant's Motion for dismissal pursuant to Rule 12(b)(2) is denied.

**B.     VENUE**

The general venue provision under federal law, 28 U.S.C. § 1391, allows a plaintiff to bring suit in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the

events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is not a district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.  28 U.S.C. § 1391(b).  However, while venue is initially reliant on a plaintiff's preference as reflected in the pleadings, a district court may upon motion or *sua sponte* dismiss or transfer a civil action to any other district in the interest of justice and/or for the convenience of parties and witnesses.  See 28 U.S.C. § 1404(a); see also 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3).[3]

Transfers under § 1404(a) are at the discretion of the district court and should be adjudged on an individualized, case-by-case basis with an eye toward convenience and fairness. See Stewart Org., Inc., v. Ricoh Corp., 487 U.S. 22, 29 (1988).  In making this determination, courts must "consider all relevant factors to determine whether the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (quoting 15 Charles Wright, Arthur Miller and Edward Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters § 3847 (2d ed. 1986)).  The Third Circuit in Jumara identified these considerations as falling within the spheres of private and public interests.  Jumara, 55 F.3d at 879.  Private interests include: the plaintiff's forum preference as manifested in the pleadings, the

---

[3]"Many courts have noted that the only relevant distinction between the venue-transfer statutes is simply which of the two principal transfer statutes  -- §§ 1404(a) and 1406(a) -- is appropriate for transfers: the former is appropriate when venue is proper and the latter should be used when venue is improper."  Lafferty v. St. Riel, 495 F.3d 72, 78 (3d Cir. 2007).  Since venue is proper here, the focus of this Memorandum Opinion is on the appropriateness of transfer of venue to the Northern District of Texas pursuant to § 1404(a).

defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of the witnesses (only if they are unavailable for trial in another fora), and the location of books and records.  Id. (citing 15 Wright, Miller & Cooper §§ 3848, 3849, 3851, 3853).  Moreover, public interests include: the enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive, the relative administrative difficulty in the two fora resulting from court congestion, the local interest in deciding local controversies at home and the familiarity of the trial judge with the applicable state law.  Id. (citing 15 Wright, Miller & Cooper § 3854).  The burden rests with the movant to show that transfer is appropriate.  Jumara, 55 F.3d at 879 (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) cert denied, 401 U.S. 910 (1971)); see also In re Amendt, 169 F. App'x 93, 96 (3d Cir. 2006).

        Prior to engaging in the § 1404(a) analysis, we must first ascertain whether venue would be proper in Defendant's preferred forum, the Northern District of Texas.  See McNulty v. J.H. Miles and Co., Inc., 913 F. Supp. 2d 112, 115 (D.N.J. 2012).  If this forum is permissible under § 1391, we must then determine whether a transfer would be warranted under § 1404(a) and the considerations elicited in Jumara.  See Clark v. Burger King Corp., 255 F. Supp. 2d 334, 337 (D.N.J. 2003); see also Jumara, 55 F.3d at 879.  In this case, venue would be proper in the Northern District of Texas as Defendant is a resident of Texas, a substantial part of the events or omissions giving rise to the claim occurred in Texas and Defendant would be subject to personal jurisdiction in Texas.  See 28 U.S.C. § 1391(b).  Defendant, as the movant in this matter, bears the burden of demonstrating that transfer is necessary.  Jumara, 55 F.3d at 879 (citing Shutte, 431 F.2d at 25; see also In re Amendt, 169 F. App'x at 96. We now proceed to analyze whether

Defendant has demonstrated that transferring this matter to the Northern District of Texas is appropriate in this case.

      **1.**      **Have the Parties contractually agreed to the adjudication of this suit in the Northern District of Texas?**

In ruling on a motion to transfer venue, "the plaintiff's choice of venue should not be lightly disturbed." Jumara, 55 F.3d at 879.  However, while the usual practice is to defer to the plaintiff's choice of forum, such deference is not warranted where the plaintiff has contractually chosen a different venue.  Id. at 877 (citing In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)).  "A forum selection clause can be a term of a contract and agreed to by the parties." Irwin v. Celebrity Cruises, Inc., No. 12-4385, 2013 WL 1314463, at *2 (E.D. Pa. Apr. 2, 2013). Before enforcing a forum selection clause, a court must determine whether the clause was effectuated, in which, the prime consideration is the intent of the parties.  Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1009 (3d Cir. 1980) (stating that a "court's paramount consideration is the intent of the parties").  Accordingly, a valid forum selection clause is "treated as a manifestation of the parties' preferences as to a convenient forum . . . . Thus, while courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972).

Plaintiff has chosen to file this suit in the Eastern District of Pennsylvania, and argues that this is the proper forum for this case.  Defendant contends that Plaintiff, through agreeing to a forum selection clause in the Terms and Conditions of Sale ("Terms and Conditions"), has contractually designated the Northern District of Texas as the appropriate forum for any claims

arising from Plaintiff and Defendant's business relationship.[4]  Plaintiff argues that the Terms and Conditions, which contain the forum selection clause, were not part of the agreed upon sales contract, and therefore, cannot be invoked in support of a transfer of venue.  In order to proceed further, we must determine whether the forum selection clause was an included term within the contract between Plaintiff and Defendant.

There is disagreement between the parties as to the date of formation and the terms of the contract.  Plaintiff contends that contract formation occurred on November 13, 2009, when Plaintiff by submitting a Purchase Order accepted Defendant's offer, which was in the form of a Price Quotation sent the previous day.  Defendant disagrees, and argued at the hearing that the Purchase Order of November 13, 2009, could not be fulfilled, and therefore, no contract could be or was formed on this date.[5]  Instead, Defendant argues that the contract was formed when Plaintiff placed its first order on November 18, 2009, and that Plaintiff's knowledge of the Terms and Conditions incorporated them within the agreement.  Specifically, Defendant imputes this knowledge to Plaintiff because Plaintiff "knew of and/or should have known of the terms and conditions of sale, which included the forum selection clause, because it was incorporated into two emails that were sent to and received by (Plaintiff), in addition to being on (Defendant's)

[4]Specifically, the Terms and Conditions state, "The Contract shall be governed by and construed in accordance with the internal laws (and not the laws of conflicts) of the State of Texas. . . .  Any action at law, suit in equity, or judicial proceeding of any kind arising directly, indirectly, or otherwise in connection with, out of, related to or from this Contract or the relationship between the parties shall be litigated only in the state or federal courts located in Dallas County, Texas, and the parties waive any right they may have to challenge the jurisdiction of this court or seek to bring any action in any other forum, whether originally or by transfer, removal, or change of venue."  See Def.'s Suppl. Mot. to Dismiss or Transfer Venue ¶ 11 and Ex. B (Terms and Condition of Sale).

[5]Specifically, Dr. Wang testified at oral argument that he did not believe the contract was finalized because the Purchase Order did not discuss parameters and that Defendant could not fulfill Plaintiff's order for three months.

website, which (Plaintiff) visited before ever contacting (Defendant)." <u>See</u> Def.'s Suppl. Mot. to Dismiss or Transfer Venue ¶ 18.

General principles of contract law require that in order for a contract to be enforceable there must exist offer, acceptance and consideration. <u>Feldman v. Comm. College of Allegheny</u>, 85 F. App'x 821, 827 (3d Cir. 2004). Here, we are in agreement with Plaintiff that all of the necessary elements of an enforceable contract were met on November 13, 2009, when Plaintiff accepted Defendant's offer of the previous day. A comparison of the Price Quotation and the Purchase Order confirms that the documents are mirror images of each other, and that they satisfy the requirements for a "meeting of the minds." <u>Id.</u> Conspicuously absent from each document are Defendant's Terms and Conditions, or any reference to them. Furthermore, we are not persuaded by Defendant's "inability to perform" argument as Defendant has neglected to submit any evidence in support of this notion such as an email informing Plaintiff of Defendant's limitations or the rejection of Plaintiff's payment for the goods. In contrast, the facts belie Defendant's contention. In fact, Dr. Wang testified that performance was possible, although it would take three months. For these reasons, we find that the forum selection clause was not a contractual term included within the contract entered into on November 13, 2009. However, this finding does not end our inquiry as Defendant raises other grounds for the inclusion of the Terms and Conditions despite their absence from the express terms of the agreement.[6]

Defendant asserts that Plaintiff's failure to object to the Terms and Conditions, even though Defendant "reasonably communicated" them to Plaintiff, renders the terms enforceable

---

[6]We note that Defendant did not file a reply to Plaintiff's Response in Opposition. Instead Defendant chose to set forth its arguments at the hearing.

under the contract.  Defendant cites <u>Standard Bent Glass Corp. v. Glassrobots Oy</u>, 333 F.3d 440 (3d Cir. 2003) for the proposition that a "contract may include additional or different non-material terms proposed by either party, depending on whether the other party formally objects to the terms."  <u>Standard Bent Glass</u>, 333 F.3d at 447.  Furthermore, Defendant argues that 13 Pa.C.S. § 2207 ("§ 2207") assumes Plaintiff assented to the additional terms since no answer was received within a reasonable time.

Defendant's reliance is misplaced.  Forum selection clauses are material terms, and therefore, require express assent to become binding.  See <u>CECG, Inc. v. Magic Software Enters., Inc.</u>, 51 F. App'x 359, 364 (3d Cir. 2002); <u>see also</u> <u>TRE Services, Inc.</u>, 2012 WL 2872830, at *3. In addition, § 2207 is of no aid to Defendant because it imposes a statutory bar on additional terms becoming part of the contract where they materially alter the agreement.  See 13 Pa.C.S. § 2207.[7]  "In the absence of a party's express assent to the additional or different terms of the writing, section 2-207 provides a default rule that the parties intended, as the terms of their agreement, those terms to which both parties have agreed."  <u>Step-Saver Data Sys., Inc. v. Wyse Tech.</u>, 939 F.2d 91, 99 (3d Cir. 1991).  As Defendant failed to demonstrate that Plaintiff expressly assented to the Terms and Conditions, the application of the forum selection clause under Defendant's "failure to object" argument is proscribed by Pennsylvania law.  See 13 Pa.C.S. § 2207; <u>see also</u> <u>TRE Services, Inc.</u>, 2012 WL 2872830, at *3.  Moreover, Defendant's attempt at attributing knowledge of the Terms and Conditions on Plaintiff based on its website is unsupported by any  judicial precedent holding that the presence of additional terms and

---

[7]Texas and Pennsylvania relied on the Uniform Commercial Code in crafting their relevant statutes, and these state statutes are mirror images of each other.  <u>See</u> 13 Pa.C.S. § 2207; V.T.C.A., Bus. & C. § 2.207.

conditions on a website are binding on a party without any further incorporation into the contractual agreement.

Defendant also contends that the Terms and Conditions were incorporated by reference into its contract with Plaintiff.  However, "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." Standard Bent Glass Corp., 333 F.3d at 447.   Here, incorporation is barred because there was no clear reference to the Terms and Conditions in the contract, and the incorporation of the Terms would result in surprise and hardship.  See Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282 F.3d 92, 100 (2d Cir. 2002) (quoting UCC § 2-207 cmt.[8]4) (finding that a material alteration to the contract would "result in surprise or hardship if incorporated without express awareness by the other party")).  Moreover, we do not find Defendant's reliance on One Beacon Ins. Co. v. Crowley Marine Servs., Inc., 648 F.3d 258 (5th Cir. 2011) and Oceanconnect.com v. Chemoil Corp., No. 07-1053, 2008 WL 194360 (S.D. Tex. Jan. 23, 2008) compelling as these cases are factually inapposite to the case before this Court.

### 2.    Application of the Jumara Factors

We must now determine whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer of venue" to the Northern District of Texas. See Jumara, 55 F.3d at 879.  Due to the "flexible and individualized" nature of this analysis, the district courts are granted wide latitude in deciding a motion to transfer venue.  Stewart Org.,

---

[8]In this case, Dr. Wang informed Plaintiff by email of the Terms and Conditions *after* the formation of the contract.

Inc., 487 U.S. at 29.  In such motions, the burden rests on the defendant "to show the desirability of transferring venue and to present evidence upon which the court may rely on in justifying transfer."  Id.  As venue would be proper in either the Eastern District of Pennsylvania[9] or the Northern District of Texas[10], a balancing of the interests must be undertaken to ascertain whether transfer is warranted.  Id.

### a.     **Private Factors**

The private interests at play include: the plaintiff's forum preference; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses (only if they are unavailable for trial in another fora); and the location of books and records.  Jumara, 55 F.3d at 879 (citing 15 Wright, Miller & Cooper §§ 3848, 3849, 3851, 3853).

We find the private factors favor denying the transfer of this litigation.  A plaintiff's choice of forum is accorded "paramount consideration," and should not be "lightly disturbed."  See Jumara, 55 F.3d at 879; Shutte, 431 F.2d at 25.  Plaintiff filed suit in the Eastern District of Pennsylvania, and this factor weighs heavily against the transfer of venue.  Furthermore, the breach of contract alleged by Plaintiff arose in Pennsylvania, which also favors venue in this District.  See Gen. Motors Corp. v. Schneider Logistics, Inc., No. 06-2195, 2006 WL 2987785, at *5 (E.D. Pa. Oct. 17, 2006) (holding that a breach of contract action arises at the location of

---

[9]The Eastern District of Pennsylvania constitutes a proper venue because "a substantial part of the events or omissions giving rise to the claim occurred" and "a substantial part of the property that is subject of the action is situated" in this District.  See 28 U.S.C. § 1391(b)(2).

[10]As previously stated, venue would be proper in the Northern District of Texas as Defendant is a resident of Texas, a substantial part of the events or omissions giving rise to the claim occurred in Texas and Defendant would be subject to personal jurisdiction in Texas.  See 28 U.S.C. § 1391(b).

performance of that contract); Superior Precast, Inc. v. Safeco Ins. Co. of Am., 71 F. Supp. 2d 438, 444 (E.D. Pa. 1998).

In reaching the conclusion that the private factors favor venue in this District, we do not find the convenience of the parties or the witnesses to be dispositive.  The parties are similarly scaled businesses, and Defendant has demonstrated the ability to travel to this District. Moreover, it appears to the Court that Dr. Wang is capable of testifying to many, if not all, of the product related issues including questions arising from the manufacturing and the impact of modification to the products.  We believe that this fact will curb the number of witnesses required by Defendant to present its case.  Additionally, Defendant's books and records being located in Texas is equally not determinative as Plaintiff will be entitled to them in discovery. See McGraw v. GlaxoSmithKline, No. 12-2119, 2014 WL 211343, at *5 (E.D. Pa. Jan. 17, 2014).

### b.     Public Factors

The public interest factors to be considered include: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; and the familiarity of the trial judge with the applicable state law.  Id. (citing 15 Wright, Miller & Cooper § 3854).  We find that these factors favor retaining the litigation in this District.  In this case, Pennsylvania has a strong interest in ensuring that its residents are protected from out of state corporations.  McGraw, 2014 WL 211343, at *6 (citing Zubyk v. LPBOC Hotel Ltd. P'ship, No. 00-971, 2000 WL 963168, at *11 (E.D. Pa. June 27, 2000) (finding that a state "has an interest in protecting its residents from out-of-state

corporations," and "providing its residents with a means to redress injuries inflicted by out-of-state defendants").  Defendant does not provide any argument to the contrary.  Furthermore, we find that the trial will be easier, more expeditious, and less expensive in Pennsylvania as the evidence in the form of 225 "windows"[11] is located in Pennsylvania and the majority of witnesses necessary for Plaintiff's claim and Defendant's affirmative defense[12] reside in this District.

Moreover, we do not find Defendant's argument that transfer is warranted because Texas courts are more familiar with the applicable Texas law to be compelling.  See Doc. 12 ¶ 21.  As we have already determined that the forum selection clause is not enforceable and Texas law does not apply over Plaintiff's claims, the foundation of Defendant's argument has been undercut.  See also McCraw, 2014 WL 211343, at *7 (finding that whether Texas or Pennsylvania law applied does not hold weight as "the district court in either state is more than capable of applying that law to the case").

Defendant neglected to address whether court congestion within this District relative to the Northern District of Texas or the enforceability of judgment in either district favors transfer.  Therefore, we do not analyze these factors.  See Jumara, 55 F.3d at 879 (burden is on Defendant to show transfer is necessary); Shutte, 431 F.2d at 22.  Moreover, the enforceability of judgment factor is immaterial as "there is little significant difference in enforcing a judgment in one federal forum than in another."  Maaco Franchising, Inc. v. Tainter, No. 12-5500, 2013 WL 2475566, at *5 (E.D. Pa. June 10, 2013).

---

[11]These windows contain the allegedly defective 300 film.  See Pl.'s Resp. in Opp'n p. 34.

[12]At oral argument and through the affidavit and the testimony of Dr. Wang, we are led to believe that Defendant will raise the affirmative defense that it was Plaintiff's mistakes that led to the injury.  See Def.'s Suppl. Mot. to Dismiss or Transfer Venue Ex. A at 3.

It is inevitable in cases such as this that one party will be inconvenienced by having to litigate in a foreign venue not of its choosing.  However, "the purpose of a transfer is not to shift the inconvenience from one party to another," but rather to place the litigation in the venue that is the most convenient for the parties and witnesses, and best serves the interests of justice.  <u>See</u> 28 U.S.C. § 1404(a); <u>Jumara</u>, 55 F.3d at 879; <u>Maaco</u>, 2013 WL 2475566, at *5.  The Third Circuit in <u>Jumara</u> provided a flexible, framework to reach this determination, and our decision reflects its application to the facts of this case.  <u>Jumara</u>, 55 F.3d at 879.  Overall, we find that the majority of the relevant factors weigh in favor of retaining the litigation in the Eastern District of Pennsylvania.  We are not unsympathetic to the inconveniences inflicted on Defendant by retaining the litigation in this District.  However, our finding evidences that Defendant has failed to adequately establish the need for the transfer of this matter to the Northern District of Texas. <u>Id.</u> (stating that the burden rests with movant to demonstrate need for transfer).  Accordingly, Defendant's Motion to Transfer Venue and/or Dismiss is denied.

## III.   <u>CONCLUSION</u>

For the aforementioned reasons, Defendant's Supplemental Motion to Dismiss Plaintiff's Amended Complaint and/or Motion to Transfer Venue is denied.

An appropriate Order follows.